UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHANTELL MCKINNIES,

                Plaintiff,

      v.

CITY OF NEW YORK,

                Defendant.

**MEMORANDUM & ORDER**
23-CV-2567 (HG) (JRC)

**HECTOR GONZALEZ**, United States District Judge:

    *Pro se* Plaintiff Shantell McKinnies, a former New York City Police Officer, brings this action against the City of New York.[1]  Plaintiff alleges, among other things, that she was discriminated against by the NYPD based on her race, that she was subjected to a hostile work environment at the NYPD, and that she was retaliated against for submitting internal complaints while employed by the NYPD.  *See generally* ECF No. 18 (Second Amended Complaint). Plaintiff also alleges constitutional violations under the First, Fourth, and Fourteenth Amendments.  *See id.*  Defendant has moved to dismiss Plaintiff's Second Amended Complaint. ECF No. 20 (Defendant's Motion to Dismiss); ECF No. 21 (Defendant's Memorandum of Law

---

[1]    Plaintiff originally brought this action against the New York City Police Department ("NYPD").  *See* ECF No. 1 (Complaint); ECF No. 8 (Amended Complaint).  However, Plaintiff sought—and was permitted—to amend her complaint to substitute the NYPD for the City of New York after counsel for the City indicated that the NYPD was not a proper party to the case. *See* ECF No. 14 (Defendant's Letter); ECF No. 15 (Plaintiff's Letter); ECF No. 16 (Order Directing Plaintiff to Amend).  The Court construes the filing of the Amended Complaint as a motion for voluntary dismissal as to the NYPD.  In any event, because Plaintiff is proceeding *pro se*, the Court would otherwise consider Plaintiff's claims against the NYPD as if she had brought them against the City directly.  *See, e.g.*, *Cameron v. Coach Apparel Store*, No. 07-cv-3991, 2009 WL 536068, at *2 (S.D.N.Y. Mar. 3, 2009) ("Keeping in mind that Plaintiff appears *pro se*, the Court will construe his claims against the New York Police Department[,] . . . which is not a suable entity, as being claims against the City of New York."); *Maier v. NYPD*, No. 08-cv-5104, 2009 WL 2915211, at *2 (E.D.N.Y. Sept. 1, 2009) (collecting cases).

in support of its Motion to Dismiss).  For the reasons stated herein, Defendant's motion is

GRANTED.

## **BACKGROUND**

The Court draws the following facts from Plaintiff's Second Amended Complaint as well

as other documents of which the Court may take judicial notice.[2]  Plaintiff alleges that she

experienced racial discrimination, a hostile work environment, and retaliation from the NYPD at

the 102nd and 94th Precincts after she reported in 2007 that a sergeant was exhibiting implicit bias

against African Americans.  ECF No. 18 at 7, 10.[3]  Thereafter, Plaintiff "received a series of

punishment assignments, frequent tour changes, separation from [her] regular partner and

unfavorable interactions from the Commanding officer." *Id.* at 7.  For example, Plaintiff states

that the NYPD retaliated against her by issuing an arrest warrant in 2007 in relation to a vehicle

she financed for her "ex." *Id.*  This resulted in disciplinary charges, *see* ECF No. 8-1 at 10–11

(Notice of Amendment of Charges), and the placement of Plaintiff on modified assignment for

---

[2]      The Court is "required to treat [Plaintiff's] factual allegations as true, drawing all
reasonable inferences in favor of Plaintiff[] to the extent that the inferences are plausibly
supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133
(2d Cir. 2021).  The Court therefore "recite[s] the substance of the allegations as if they
represented true facts, with the understanding that these are not findings of the [C]ourt, as [I]
have no way of knowing at this stage what are the true facts." *Id.*  Although the general rule is
that a plaintiff may not raise new allegations in her opposition to a motion to dismiss, because
Plaintiff is representing herself, the Court will consider both the allegations in the Second
Amended Complaint and in Plaintiff's Opposition, *see* ECF No. 24 ("Opposition"), in deciding
the motion.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court
deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his
papers opposing the motion."); *Guzman v. Barr*, No. 19-cv-7163, 2021 WL 135909, at *2
(S.D.N.Y. Jan. 14, 2021) ("In addition to what is contained in the complaint, the Court may
consider factual statements made in a *pro se* plaintiff's opposition to a motion to dismiss.").

[3]      The Court uses the pages assigned by the Electronic Case Files System ("ECF").

four years.  *See* ECF No. 18 at 7.[4]  Plaintiff alleges that when she appeared for a hearing on the

charges four years later, the Deputy Inspector in charge of investigating the charges appeared

agitated towards her and so Plaintiff asked for the hearing to end.  *See* ECF No. 18 at 7.  After

Plaintiff stopped the hearing, she heard the Deputy Inspector say that Plaintiff was going to

receive a change in duty status.  *Id.*  Plaintiff believes the Deputy Inspector's actions "were the

result of explicit bias and racism."  *Id.* at 8.

After Plaintiff was restored to full duty status in 2012, she was subjected to multiple

investigations that were placed on her permanent record.  *Id.* at 8.  Specifically, she alleges that

from 2012 to 2022, when she was assigned to the 94th Precinct, she was issued a series of

"Command Disciplines," resulting in the loss of vacation time.  *Id.* at 10.  For example, Plaintiff

alleges that on November 6, 2018, marijuana was placed inside of her department vehicle and

she was thereafter issued a "Command Discipline" for failing to find the contraband.  *Id.* at 11.

In 2019, she was "the only woman of color brought up on departmental charges" regarding her

use of pepper spray in a large crowd.  *Id.* at 11–12.  Sometime in November 2021, "an

unwarranted psych[] evaluation was ordered [for Plaintiff] following a sick callout for

hypertension."  *Id.* at 12.  During the evaluation, Plaintiff was "made to feel delusional by the

doctor who is an NYPD employee." [5]  *Id.*  In December 2021, Plaintiff alleges that the NYPD

medical division called her thirteen times in two days while she was home from work with

---

[4]     The Court takes judicial notice of the documents attached to Plaintiff's Amended
Complaint and Opposition.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.
2002); *Sommersett v. City of New York*, No. 09-cv-5916, 2011 WL 2565301, at *3 (S.D.N.Y.
June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal
memoranda, the Court may consider statements in such papers to supplement or clarify the
plaintiff's pleaded allegations.").

[5]     Plaintiff also alleges that she sought personal counseling and that her personal counselor
was asked by NYPD officers if she was open to recording her sessions with Plaintiff.  ECF No.
18 at 12.

COVID-19.  *Id.* at 11.  Plaintiff states that she was not offered an opportunity to air her grievances at a departmental hearing that would have allowed her to address these allegations. *Id.* at 8.

Plaintiff also references a number of undated interactions with individuals at the NYPD. First, Plaintiff states that a union delegate warned her previous partner not to work with her "because [she] was going to be 'hung' by upper management."  ECF No. 18 at 11.  The same union delegate suggested to Plaintiff that she should not use a private attorney for any further disciplinary hearings.  *Id*.  Second, Plaintiff alleges that her lieutenant, who was the "the platoon leader over the entire 4x12 tour, tormented and belittled [her] at every opportunity to create a hostile work environment, so much so [she] had to seek personal counseling to better cope with the hostile situation."  *Id.*  Plaintiff states that she "cannot say with any degree of certainty that he is a racist, but [she] know[s] he targeted Hispanics and African Americans to abuse his authority."  *Id.*

Plaintiff further asserts that from 2021 through 2023, she was surveilled by various unidentified individuals, whom she alleges in conclusory fashion were members of the NYPD. ECF No. 18 at 9–10.  Plaintiff recounts that multiple individuals witnessed NYPD officers entering her home in New York and her home in North Carolina.  *Id.*  Members of the NYPD also allegedly informed Plaintiff's neighbors that she sold drugs.  *Id.* at 9.  Plaintiff states that she was followed on multiple occasions by unidentified individuals and police officers who would yell things at her, such as, "[g]et the f**k off the job,"[6] "[y]our complaint is as good as garbage," and "[s]top the BS." *Id.* at 9–10, 14.  Other times, she was allegedly approached by individuals who physically followed her on foot or in their cars.  *Id.* at 9–10.  Plaintiff believes these

---

[6]     Throughout this Order, the Court has modified the expletives that Plaintiff details in the Complaint.

interactions were efforts by the NYPD to intimidate her into withdrawing her complaints and retiring early. *Id.* at 8–10.  For example, on July 28, 2021, Plaintiff was threatened to retire by an unidentified white officer at Brooklyn Hospital.  The officer allegedly used racial slurs and intimidating language, and stated "[y]ou [f]*****g [b]***h, [n]***a just retire." *Id.* at 12. Plaintiff alleges that, as a result of the continued surveillance, the NYPD learned that several members of Plaintiff's family were released from prison in the past 10 to 12 years. *Id.* at 13. Plaintiff believes the NYPD used this information to "create their narrative" that Plaintiff dealt drugs. *Id.*

These events caused Plaintiff to contact the Department of Justice, NYPD Internal Affairs, and the Attorney General.[7]  ECF No. 18 at 8.  Plaintiff had several meetings with NYPD Internal Affairs and exchanged several emails with the Internal Affairs Commander. *Id.* at 13. Plaintiff then retired from the NYPD "out of fear" in February 2022. *Id.* at 8.  On September 23, 2022, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), and the EEOC notified the NYPD of the charge on October 2, 2022.  ECF No. 24-5 at 8–10 (Charge of Discrimination); ECF No. 22-2 at 2 (Notice of Charge of Discrimination).[8]  On January 5, 2023, the EEOC

---

[7]      Plaintiff does not specify whether she contacted the Attorney General of the State of New York or the United States Attorney General.

[8]      The Notice of Charge of Discrimination was filed by Defendant in support of its motion to dismiss.  ECF No. 22-2 at 2.  Attached to the Notice of Charge of Discrimination is a Charge of Discrimination signed by Plaintiff on September 23, 2022. *Id.* at 6–7.  Plaintiff does not dispute that she contacted the EEOC in 2022, and she attaches to her Opposition an unsigned Charge of Discrimination that was sent to her by the EEOC on September 23, 2022, the same date on which she appears to have signed the Notice of Charge of Discrimination.  ECF No. 24-5 at 8–10.  In light of this, the Court understands Plaintiff to be conceding that she signed the Charge of Discrimination on September 23, 2022. *See Walker*, 717 F.3d at 122 n.1 ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").  In any case, the Court may take judicial notice of the signed

dismissed the charge and informed Plaintiff of her right to sue in federal court.  ECF No. 24-5 at

11 (EEOC Determination and Notice of Right to Sue Letter).

## **LEGAL STANDARD**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough

facts to state a claim to relief that is plausible on its face.'"  *Johnson v. Mount Sinai Hosp. Grp.*,

No. 23-466, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).[9]  A claim is plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be

true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

In addition to requiring sufficient factual matter to state a plausible claim for relief,

pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide a short, plain

statement of claim against the defendant so that it has adequate notice of the claims against it.

*Id.* at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation.").  A pleading that only "tenders naked assertions devoid of further factual

enhancement" will not suffice.  *Id.*  To satisfy this standard, the complaint must, at a minimum

"disclose sufficient information to permit the defendant to have a fair understanding of what the

plaintiff is complaining about and to know whether there is a legal basis for recovery."  *Kittay v.*

*Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000).

---

Charge of Discrimination because Plaintiff possessed that document and relied on it in "framing
the complaint."  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

[9]     Unless noted, case law quotations in this Order accept all alterations and omit all internal
quotation marks, citations, and footnotes.

In reviewing a *pro se* complaint, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that, even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally"). The Court must construe *pro se* Plaintiff's pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006).

## DISCUSSION

### I.     A Number of Plaintiff's Claims are Barred by the Statute of Limitations

#### A.     *Plaintiff's Title VII and Section 1983 Claims*

Defendant argues that Plaintiff's Title VII claims arising from factual allegations that occurred prior to December 6, 2021, are time-barred because Plaintiff filed her EEOC charge on October 2, 2022. ECF No. 21 at 10. "Under Title VII, a plaintiff must file a charge with the EEOC within 300 days of a discriminatory act. . . . Claims concerning discrete acts outside this window will be time-barred." *Oliver v. D'Amico*, No. 22-979, 2024 WL 2013670, at *2 (2d Cir. May 7, 2024). Defendant's argument is premised on the assertion that Plaintiff filed an EEOC charge on or about October 2, 2022. ECF No. 21 at 10. However, October 2, 2022, is the date that the NYPD was informed of Plaintiff's charge and not the date Plaintiff filed her charge with the EEOC. ECF No. 22-2 at 2. Rather, Plaintiff signed the Charge of Discrimination on September 23, 2022. ECF No. 22-2 at 6–7; *see also* ECF No. 24-5 at 8 ("When you are ready to file the charge with the EEOC, you may digitally sign and submit it through the portal."). While the effect of using the September 23, 2022, date is minimal in the Court's statute of limitations analysis, in construing Plaintiff's pleadings to raise the strongest arguments that they suggest, the

7

Court uses the September 23, 2022, date as the date that Plaintiff filed her EEOC charge.
Accordingly, all discrete acts prior to November 27, 2021, are time barred under Title VII
because they occurred more than 300 days prior to when Plaintiff filed her Charge of
Discrimination with the EEOC.

Defendant similarly argues that Plaintiff's Section 1983 claims that arise from factual
allegations prior to April 4, 2020, are time barred.  ECF No. 21 at 11.  Federal courts apply the
state law statute of limitations for personal injury actions for claims under Section 1983, and in
New York that statute of limitations is three years.  *See Rivera v. City of New York*, No. 20-cv-
9968, 2022 WL 1523165, at *4 (S.D.N.Y. May 13, 2022) ("Section 1983 does not provide a
specific statute of limitations. Thus, courts apply the statute of limitations for personal injury
actions under state law. Section 1983 actions filed in New York are therefore subject to a three-
year statute of limitations.").  Accordingly, all claims that pre-date April 4, 2020, are time barred
because Plaintiff filed her federal complaint on April 4, 2023.  *See* ECF No. 1.

### B.    Equitable Tolling

Plaintiff does not seriously contest that a portion of her claims would be time-barred, but
instead argues that her claims survive based on equitable tolling and on the continuing violation
doctrine.  ECF No. 24 at 6–8.  "[E]quitable tolling is only appropriate in rare and exceptional
circumstances, in which a party is prevented in some extraordinary way from exercising [her]
rights."  *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as
amended* (July 29, 2003) (applying to Title VII claims); *see also Covington v. New York City
Police Dep't*, 471 F. App'x 28, 29 (2d Cir. 2012) (applying to 1983 claims).  To determine
whether equitable tolling applies, "a district court must consider whether the person seeking
application of the equitable tolling doctrine (1) has acted with reasonable diligence during the

time period she seeks to have tolled, and (2) has proved that the circumstances are so

extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80–81.

Plaintiff has failed to demonstrate that her circumstances are so extraordinary as to

warrant the application of equitable tolling.  The factual allegations underlying Plaintiff's claims

date back to 2007, and although Plaintiff may have pursued complaint channels within her

agency, she did not file her federal complaint until 2023.  *See generally* ECF No. 18.  Although

Plaintiff alleges in her Second Amended Complaint that she did not know about this "judicial

remedy" until contacting the EEOC in 2022, "ignorance of the law is not sufficient to justify

equitable tolling." *Rosenwasser v. Fordham Univ.*, 772 F. App'x 1, 3 (2d Cir. 2019) (applying to

1983 claims); *see Sacks v. Shoprite Supermarkets*, No. 15-cv-2469, 2015 WL 4078764, at *2

(E.D.N.Y. July 6, 2015).  Nor can the 300-day filing period be tolled in the Title VII context

"pending the employee's realization that the conduct was discriminatory." *Sacks*, 2015 WL

4078764, at *2.  Because Plaintiff has provided no other basis for tolling her claims, the Court

finds that the extraordinary remedy of equitable tolling not applicable here.[10]

---

[10]     Plaintiff also argues that, to the extent her Section 1983 claim is based on events that
occurred prior to April 4, 2020, the statute of limitations on those events was tolled pursuant to
the New York Governor's COVID-19 executive orders.  *See* ECF No. 24 at 7.  Contrary to
Defendant's assertion, *see* ECF No. 25 at 8, courts in this Circuit have found that the COVID-19
executive orders do apply to claims arising under Section 1983 because the executive orders do
not "defeat the goals" of Section 1983, but rather "advance[] the goals of deterrence and
compensation by permitting [a] [p]laintiff ample time to pursue [her] claims during a global
pandemic." *See, e.g.*, *Bonilla v. City of New York*, No. 20-cv-1704, 2020 WL 6637214, at *2
(E.D.N.Y. Nov. 12, 2020).  However, the Court notes that Executive Order 202.8 suspended the
"time limit for the *commencement, filing or service* of any legal action."  N.Y. Exec. Order 202.8
(Mar. 20, 2020) (emphasis added).  In other words, plaintiffs whose claims expired during the
228 days that the COVID-19 executive orders were in effect were permitted to file their cases
after that 228-day period.  Applying the COVID-19 executive orders most favorably to
Plaintiff's case, for the Court to deem timely the factual allegations arising prior to April 4, 2020,
Plaintiff would have had to file this case by the *latest* June 19, 2021, as that date is 228 days after
November 3, 2020, the date the period addressed by the COVID-19 executive orders ended.
Plaintiff filed her case almost two years after that date, on April 4, 2023.  Because Plaintiff filed
this case way beyond the date that would have permitted tolling of her claims, the Court finds

C.      *Continuing Violation Doctrine*

Plaintiff's argument that her expired claims survive under the continuing violation doctrine fares no better.  In the context of Title VII claims, the continuing violation doctrine "applies to claims composed of a series of separate acts that collectively constitute one unlawful practice and functions to delay the commencement of the statute of limitations period until the last discriminatory act in furtherance of that broader unlawful practice."  *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022).  Importantly, "this doctrine does not apply to discrete acts of discrimination or retaliation that occur outside the statutory time period, even if other related acts of discrimination occurred within the statutory time period."  *Id.*  "Rather, the doctrine extends exclusively to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment."  *Id.*  This same approach is applied in the Section 1983 context.  *Pressley v. City of New York*, No. 11-cv-3234, 2013 WL 145747, at *9 (E.D.N.Y. Jan. 14, 2013) (citing cases).

"Courts in the Second Circuit generally disfavor the continuing violation doctrine and have declined to extend its applicability absent compelling circumstances."  *Mwantuali v. Hamilton Coll.*, No. 22-cv-1395, 2024 WL 1219752, at *7 (N.D.N.Y. Mar. 20, 2024) (citing cases).  "Compelling circumstances could include situations in which the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred, or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its

---

any tolling pursuant to the COVID-19 executive orders not applicable here.  *See, e.g.*, *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, No. 22-cv-2716, 2023 WL 2346337, at *1 n.1 (S.D.N.Y. Mar. 3, 2023) (declining to toll claims where plaintiff did not file suit until nine months after the latest date plaintiff could file pursuant to the COVID-19 executive orders).

unlawfulness." *Prince v. Cnty. of Nassau*, 837 F. Supp. 2d 71, 95 (E.D.N.Y. 2011), *aff'd*, 563 F. App'x 13 (2d Cir. 2014).

Plaintiff does not meet this demanding standard.  In her Opposition, she cites to *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), to support her argument that the continuing violation doctrine should apply to her Title VII claims because "[e]ven if some of the specific acts standing alone may not be actionable as harassment, the cumulative effect of them can be."  ECF No. 24 at 6.  While this is true, there is still a requirement that "an act contributing to the claim occurs within the filing period."  *Morgan*, 536 U.S. at 117.  And, "[f]or an otherwise untimely act to contribute to a hostile work environment enough to warrant consideration by the Court, it must be sufficiently related to timely unlawful acts."  *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, No. 23-cv-10753, 2024 WL 3925757, at *8 (S.D.N.Y. Aug. 23, 2024).  "[T]he commonality of the environment in which the incidents took place (and whether a change in environment is due to intervening action by the employer), the nature of the incidents, and the temporal discontinuity between the incidents—are significantly relevant to assessing whether incidents are part of the same hostile environment claim."  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 81–82 (2d Cir. 2010) (Calabresi, J., concurring).  "The mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation."  *Rebrovich v. Cnty. of Erie*, 544 F. Supp. 2d 159, 170 (W.D.N.Y. 2008).

Plaintiff does not raise compelling circumstances that would warrant application of the continuing violation doctrine.  For the events that occurred prior to the statutory time frame, Plaintiff was aware of each act at the time that it occurred, and there was no "covert conduct" which would have caused her to "only belatedly recognize[] its unlawfulness."  *Prince*, 837 F. Supp. 2d at 95.  The untimely events also do not appear to be sufficiently related to the alleged

timely unlawful acts.  In fact, the events that occurred within the statutory time frame, which include the ordered psychological evaluation,[11] the calls Plaintiff received when she was out sick with COVID-19, and the interactions with unidentified individuals, *see* ECF No. 18 at 9–15, appear to be distinct events with no real connection to the untimely allegations.  Here, where the events "involved different perpetrators and qualitatively different incidents, spread out over a number of years," the continuing violation doctrine does not apply.  *Bright v. Coca Cola Refresh. USA, Inc.*, No. 12-cv-234, 2014 WL 5587349, at *9 (E.D.N.Y. Nov. 4, 2014); *see also Grimes-Jenkins v. Consol. Edison Co. of New York, Inc.*, No. 16-cv-4897, 2017 WL 2258374, at *9 (S.D.N.Y. May 22, 2017) ("Though some individuals involved in timely allegations are also involved in untimely allegations, the incidents are sporadic, and the plaintiff fails to connect the timely and untimely allegations in any meaningful way."), *report and recommendation adopted*, 2017 WL 2709747 (S.D.N.Y. June 22, 2017).  Accordingly, the Court finds the events that occurred within the statutory time period are too attenuated from the untimely allegations to warrant applying the continuing violation doctrine in this case.

## II.     Plaintiff Fails to Adequately Plead Violations Under Title VII or Section 1983

As to Plaintiff's timely claims against Defendant, she fails to plausibly allege violations under Title VII and Section 1983.  Title VII prohibits an employer from discriminating against an employee because of the employee's race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-2(a).  For Plaintiff to bring a claim under 42 U.S.C. § 1983, Plaintiff must show that the harm was "committed by a person acting under color of state law," and that the action

---

[11]     It is not clear when exactly the ordered psychological evaluation occurred, as Plaintiff states in her Second Amended Complaint only that the evaluation was ordered after November 2, 2021.  *See* ECF No. 18 at 12.  In construing Plaintiff's pleadings to raise the strongest arguments that they suggest, the Court assumes that the evaluation occurred after November 21, 2021.

"deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Plaintiff alleges that she was discriminated against on the basis of her race, and as a result, she received "punishment assignments," was subjected to a hostile work environment, and was forced to retire early. ECF No. 18 at 7–15. Plaintiff also alleges that her First, Fourth, and Fourteenth Amendment rights were violated. ECF No. 18 at 8, 9–11, 13.

A.   *Discrimination*

Plaintiff has not plausibly alleged that she was discriminated against on the basis of her race. To state a claim of employment discrimination under Title VII or Section 1983, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015); *Myers v. Doherty*, No. 21-3012-cv, 2022 WL 4477050, at *1 (2d Cir. Sept. 27, 2022) ("The analysis of [a discrimination claim under Section 1983] parallels that of a Title VII claim."). Plaintiff may state a claim of discrimination "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. At the pleading stage, a plaintiff does not need to allege specific facts establishing each element of a *prima facie* case of discrimination. *Vega*, 801 F.3d at 86–87. But a complaint must have facts that "plausibly support[]" that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016); *see also Littlejohn v. City of New*

*York*, 795 F.3d 297, 309–10 (2d Cir. 2015) (an employment discrimination complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face).

Plaintiff makes non-specific assertions that the modified assignments she received, and investigations that were undertaken, were a result of bias and racism against her.  ECF No. 18 at 7–15.  The alleged discriminatory acts fall in the category of untimely factual allegations, *see supra* Section I, but, even if they were timely, they would not be sufficient to rise to the level of discrimination under Title VII or Section 1983.  First, Plaintiff alleges that she "noticed a clear disparity in the treatment of African Americans when compared to officers of other races," *see* ECF No. 18 at 7, but she does not expand further on how African American officers were treated differently—other than through allegations concerning her own alleged treatment.  Similarly, Plaintiff baldly alleges that she "believe[d]" the actions of the Deputy Inspector involved in her disciplinary hearing were "the result of explicit bias and racism" and that her lieutenant "targeted Hispanics and African Americans to abuse his authority," although she could not "say with any degree of certainty that he is a racist."  *Id*. at 8, 11.  Plaintiff further points to an interaction at Brooklyn Hospital with an unidentified officer—not alleged to be a supervisor—who used racial slurs against her, stating "[y]ou [f]******g [b]***h, [n]***a just retire."  ECF No. 18 at 12.

"A plaintiff's subjective belief—standing alone—is not enough to support an inference or claim that he or she has been subject to discrimination [under Title VII]."  *Tyson v. Dep't of Energy & Env't Prot.*, No. 21-cv-736, 2021 WL 4895898, at *1 (D. Conn. Oct. 20, 2021); *see also Szewczyk v. City of New York*, No. 15-cv-918, 2016 WL 3920216, at *7 (E.D.N.Y. July 14, 2016) (dismissing Title VII gender discrimination claims).  Indeed, "bald assertions of discrimination—unsupported by any meaningful comments, actions, or examples of similarly-situated persons outside of plaintiff's protected class being treated differently—[are] implausible

14

and insufficient to survive a motion to dismiss." *See De La Pena v. Metro. Life Ins. Co.*, 552 F. App'x 98, 100 (2d Cir. 2014). Therefore, Plaintiff's allegations that she *believed* actions were committed based on racial bias are insufficient to state a discrimination claim because they are based only on her subjective belief.

Regarding the instance in which the unidentified officer used the racial slur at Brooklyn Hospital, though offensive, the use of the epithet by a non-managerial, unidentified coworker, that is otherwise unconnected to the adverse employment action, is not enough to permit the Court to infer that an alleged adverse employment action was motivated by a discriminatory intent. *See Dixon v. Int'l Fed'n of Accts.*, 416 F. App'x 107, 110 (2d Cir. 2011) ("isolated derogatory remark" made by someone with no role in plaintiff's termination not enough to support claim of discrimination); *Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 406 (E.D.N.Y. 2018) ("statements from lower-level employees who did not have decision-making authority" do "not give rise to an inference of discrimination"). At bottom, another employee's derogatory remark is insufficient for Plaintiff to state a discrimination claim because the remark is "without any link to the adverse employment action taken against [Plaintiff]." *Abada v. Delta Air Lines, Inc.*, No. 21-123, 2022 WL 894704, at *2 (2d Cir. Mar. 28, 2022). Accordingly, Plaintiff has not sufficiently pled her stated belief that any potential adverse employment actions were based on racial bias. *See Durand v. Excelsior Care Grp. LLC*, No. 19-cv-2810, 2020 WL 7246437, at *6 (E.D.N.Y. Dec. 9, 2020) (explaining that "courts in this Circuit have dismissed the Title VII claims" "[w]here a plaintiff fails to provide facts supporting an inference that [her] race was a motivating factor in the employment decision," and collecting cases).

B.      *Hostile Work Environment*

Plaintiff's hostile work environment claim also fails.  To state a hostile work environment claim under Title VII and Section 1983, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Morren v. New York Univ.*, No. 20-cv-10802, 2022 WL 1666918, at *17 (S.D.N.Y. Apr. 29, 2022) (applying to Section 1983 claims), *report and recommendation adopted*, 2022 WL 1665013 (S.D.N.Y. May 25, 2022).  "The Second Circuit has held that 'proving the existence of a hostile work environment involves showing both objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'"  *See LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-cv-23, 2023 WL 6610764, at *8 (S.D.N.Y. Oct. 10, 2023) (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)).

Plaintiff's allegations do not meet the "severe and pervasive" threshold needed to state a hostile work environment claim.  Including Plaintiff's untimely assertions, Plaintiff's allegations involving modified assignments, investigations, and interactions with officers on and off duty, "concern events occurring over the course of [sixteen] years, involving different individuals and varying kinds of incidents."  *Solomon v. Fordham Univ. Admin.*, No. 22-887-cv, 2023 WL 5689712, at *2 (2d Cir. Sept. 5, 2023) (finding similar allegations concerning events over the course of nineteen years insufficient for hostile work environment claim).  But under Title VII, "[i]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in

order to be deemed pervasive.'" *LaFontant*, 2023 WL 6610764, at *8 (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  There appears to be little to no overlap nor any continuity between each of the events alleged, and many of the instances occurred outside of work and involved unidentified individuals.  ECF No. 18 at 7–15.  "Generally, an employer is not liable as a matter of law for harassment resulting from nonwork-related, off-duty interactions between co-employees because those actions are not part of the work environment."  *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 175 (E.D.N.Y. 2015).  And where there is no continuity between events that have occurred—or ability for the court to understand who the alleged wrongdoers are, there is no plausible hostile work environment claim.  *See Morren*, 2022 WL 1666918, at *17–19 (no hostile work environment claim under Title VII and Section 1983 where Court could not "discern for many of the claims the speaker, context, or frequency of" the comments alleged).

Plaintiff's only other non-conclusory allegation to support a hostile work environment claim relates to a single incident in which an unidentified officer used a derogatory remark at Brooklyn Hospital.  *See* ECF No. 18 at 12.  An allegation of a single remark by a non-supervisory, unidentified officer is insufficient to state a hostile work environment claim.  *See Paul*, 97 F. Supp. 3d at 168 (collecting cases).  Nor would the claim survive even if Plaintiff pled that the "single incident" in which the unidentified officer used a racial slur was "extraordinarily severe" to state a hostile work environment claim under Title VII.  *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 263 (2d Cir. 2023).  "[A]lthough undoubtedly offensive," Plaintiff's single allegation about an unidentified coworker's—not a supervisor's—use of a slur, "do[es] not rise to the level of an extraordinarily severe incident."  *See Chanasamone v. IBEW Loc. 97*, 523 F. App'x 820, 823 (2d Cir. 2013); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace."); *Albert-Roberts v. GGG Const., LLC*, 542 F. App'x 62, 63 (2d Cir. 2013) (coworker's single use of racial epithet insufficient to rise to the level of a hostile work environment).  Further, Plaintiff makes no allegation which would allow the Court to impute the unidentified officer's allegedly discriminatory conduct to the City.  *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 91 (2d Cir. 2019) ("The hallmark of the tangible employment action thus used to identify a supervisor is its potential to inflict direct economic injury.").  The Court therefore finds Plaintiff's allegations insufficient to make out a hostile work environment claim.

### C.    Retaliation and Constructive Discharge

To state a retaliation claim, Plaintiff must plausibly allege that "(1) [Defendant] discriminated—or took an adverse employment action—against [her], (2) because [she] has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90.  To establish causation, Plaintiff "must plausibly plead a connection between the act and [her] engagement in protected activity."  *Id.*  "For an adverse retaliatory action to be 'because' a plaintiff opposed an unlawful employment practice, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.  It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."  *Williams v. Soc. Sec. Admin.*, No. 23-cv-2348, 2023 WL 3728375, at *7 (S.D.N.Y. May 30, 2023) (quoting *Vega*, 801 F.3d at 90–91).  "A plaintiff may establish causation either directly, through evidence of retaliatory animus directed against the plaintiff by the defendant, or indirectly, by showing that the protected activity was followed closely by the discriminatory treatment."  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 333 (S.D.N.Y. 2020).

Plaintiff claims that she was retaliated against for reporting discrimination and misconduct within the NYPD.  ECF No. 18 at 7, 10.  The origin of this claim is one of Plaintiff's untimely allegations, *see supra* Section I, involving Plaintiff's 2007 complaint to her union delegate that her sergeant "exhibited implicit bias against African Americans."  ECF No. 18 at 7.  After reporting this, Plaintiff claims she "received a series of punishment assignments, frequent tour changes, separation from [her] regular partner and unfavorable interactions from the Commanding officer."  *Id.*  Even if this allegation was timely, it has not been pled in a way that would establish the causal connection between Plaintiff's report to her union delegate and the events that occurred thereafter.

First, there are no factual allegations in the Second Amended Complaint that would "qualify as direct evidence, such as an admission by the decisionmaker that he or she made a decision by relying on an improper consideration, *e.g.*, 'I fired him because he was too old.'" *Farmer*, 473 F. Supp. 3d at 333.  To the contrary—and by her own admission—Plaintiff was placed on modified assignment after disciplinary charges were filed against her in relation to a car she financed for her "ex."  ECF No. 18 at 7; *see also* ECF No. 8-1 at 9–11.  Second, regarding the temporal proximity of the protected activity to the adverse employment action— here, a modified assignment which began in February 2008—Plaintiff does not allege when exactly in 2007 she made a report to the union delegate, and therefore the Court does not have a sense of how close the reporting was to the change in assignment.  As a consequence, Plaintiff fails to plead an indirect causal connection because "it is impossible to determine whether the temporal proximity between the two events is very close."  *Dooley v. JetBlue Airways Corp.*, 636 F. App'x. 16, 19 (2d Cir. 2015); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (plaintiff's "failure to set forth a time frame" in which the protected activity and the adverse action took

place "preclude[d] [an] inference of a causal relationship" between them and warranted dismissal of First Amendment retaliation claim), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), *as recognized by Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).  Consequently, the allegations surrounding the 2007 complaint are insufficient for a finding that Defendant engaged in retaliation.

The remaining potentially timely protected activities include:  (1) a complaint to Plaintiff's commanding officers in July 2021 (not timely for Title VII); (2) Plaintiff's reporting to Internal Affairs in 2022; and (3) the filing of the EEOC complaint in 2022.  ECF No. 18 at 8. Plaintiff claims that, as a result of these complaints, the NYPD retaliated against her in the form of constructive discharge by subjecting Plaintiff to an environment of "abuse of power, physical threats, verbal abuse, and racial discrimination," which forced Plaintiff to retire early.  ECF No. 18 at 8.  "Constructive discharge claims are often premised on the same type of non-discrete conduct underlying a hostile work environment claim, although the standard for constructive discharge is higher."  *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 309 (N.D.N.Y. 2013). These claims are measured from an "objective perspective" where "the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation."  *Linell v. New York City Dep't of Educ.*, No. 15-cv-5085, 2018 WL 1611370, at *11 (E.D.N.Y. Mar. 30, 2018).

As discussed above, Plaintiff's claims are insufficient to maintain a hostile work environment cause of action, *see supra* Section II.B, and for those same reasons, the Court also finds Plaintiff's constructive discharge claim deficient to withstand a motion to dismiss.[12]  *See*

---

[12]     The Court also finds that any of the events that occurred after Plaintiff filed her EEOC complaint would not fall within the scope of her constructive discharge claim because her EEOC complaint was filed after she retired from the NYPD.  ECF No. 18 at 8, 13; *see Baptiste v. New York City Transit Auth.*, No. 02-cv-6377, 2004 WL 626198, at *7 (S.D.N.Y. Mar. 29, 2004)

*Kunik v. New York City Dep't of Educ.*, No. 15-cv-9512, 2017 WL 4358764, at *11 (S.D.N.Y. Sept. 29, 2017) ("For the reasons that Plaintiff fails to state a claim for hostile work environment, the same is true for her constructive discharge claim.").

   D. *First Amendment*

   First Amendment retaliation claims under Section 1983 require a plaintiff to allege that "(1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015).  In determining whether the relevant speech is protected, a court must determine "whether the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  For speech to touch upon a matter of public concern, it must relate to "political, social, or other concern to the community and be of general interest or of legitimate news interest." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 95 (2d Cir. 2020).  "For public employees, speech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation or that is calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection." *Id.*  If a court finds that an employee did not speak as a citizen on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418.

   Plaintiff claims that her First Amendment rights were violated because she was retaliated against in the form of constructive discharge after she "redress[ed] grievances against a white superior," and that the adverse employment actions began "after complaining of racial disparity

---

("Viable retaliation claims cannot be based on adverse actions that occurred prior to the plaintiff's protected activity.").

against African American officers by a white superior." ECF No. 18 at 8–9. Plaintiff's vague allegations do not provide the Court with any basis to find they are protected by the First Amendment. Indeed, "a complaint of system-wide discrimination can raise a public concern, but where the complaint is personal in nature and generally related to the employee's own situation, it is unprotected by the First Amendment." *Norton v. Breslin*, 565 F. App'x. 31, 34 (2d Cir. 2014) (affirming dismissal of First Amendment retaliation claim because plaintiff's complaints were "not connected to any broader policy or practice and, thus, d[id] not raise a public concern of systemic discrimination"). Although Plaintiff alleges system-wide discrimination at the NYPD, her allegations of racial discrimination are specific to her own experiences, including (a) her interaction with the Deputy Inspector involved at her disciplinary hearing, whose actions Plaintiff believes "were the result of explicit bias and racism"; (b) her interactions with one of her lieutenants, who Plaintiff alleges "targeted Hispanics and African Americans," although Plaintiff could not "say with any degree of certainty that he is a racist"; and (c) her interaction with an unidentified officer who used a racial epithet. *See* ECF No. 18 at 8, 11–12.

Plaintiff "has failed to allege facts that any pattern of discrimination affected any employee other than herself." *Giachetto v. Patchogue-Medford Union Free Sch. Dist.*, 413 F. Supp. 3d 141, 144–46 (E.D.N.Y. 2016) (finding grievance indicating systemwide discrimination not protected by the First Amendment where plaintiff failed to allege the discrimination affected any other employee); *see Rys v. Grimm*, No. 19-cv-1251, 2021 WL 827671, at *7 (N.D.N.Y. Mar. 4, 2021) ("These alleged First Amendment protected activities are all personal to Plaintiff, as opposed to matters of public concern, as they focus solely on Plaintiff's complaints of her personal treatment and how the . . . Defendant[] allegedly retaliated against her . . . as opposed to focusing on systemic discrimination."). Because each of her complaints relates to Plaintiff's

personal conditions of employment, the Court cannot find that Plaintiff's allegations amount to anything other than personal grievances, which are not entitled to First Amendment protection.

>                E.      *Fourth Amendment*

Plaintiff alleges her Fourth Amendment rights were violated because she was subjected to continued physical surveillance, break-ins at her homes, and wiretapping by unnamed and unidentified police officers and civilians.  ECF No. 18 at 8–15.  The Fourth Amendment protects "[t]he right of people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."  *Payton v. New York*, 445 U.S. 573, 586 (1980).

As pled, Plaintiff's claim fails because she has not "named or otherwise identified any defendant officer in connection with this claim so as to allow the suit to proceed against any specific individual."  *Paige v. NYPD*, No. 10-cv-3773, 2012 WL 1118012, at *4 (E.D.N.Y. Mar. 30, 2012) (*pro se* plaintiff's claim of continued physical surveillance insufficiently pled against unnamed and unidentified police officers); *see also Lautman v. Vill. of Saugerties*, No. 13-cv-00264, 2014 WL 1653189, at *6 (N.D.N.Y. Apr. 23, 2014) ("Plaintiff's allegations regarding illegal search are entirely conclusory and insufficient to plead a plausible cause of action"); *Cannon v. Wood*, No. 10-cv-1332, 2011 WL 7071100, at *7 (N.D.N.Y. Aug. 12, 2011) (dismissing illegal search claim that was devoid of any factual allegations to support it), *report and recommendation adopted*, 2012 WL 177972 (N.D.N.Y. Jan. 23, 2012).  Although Plaintiff references numerous instances in which she was surveilled or harassed by individuals, Plaintiff's allegations are entirely conclusory as the individuals she allegedly encountered are unidentified.

Because the Court is unable to ascertain if these events, as asserted by Plaintiff, were orchestrated by the NYPD, the Court finds the claim to be insufficiently pled.

Additionally, the Court finds Plaintiff's allegations of continuous surveillance and harassment to be "fanciful, fantastic, or delusional," warranting dismissal. *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless—that is, if they are fanciful, fantastic or delusional."). Plaintiff identifies no less than thirteen separate events taking place both in New York and North Carolina in which unidentified individuals—allegedly working for the NYPD—followed her and intimidated her into retiring from the NYPD. ECF No. 18 at 9–10. Although Plaintiff attaches to her Complaint and Opposition numerous photographs of individuals and vehicles that she believed were following her, none of the photographs contain any identifying information (*i.e.*, NYPD uniforms or logos) that would allow the Court to reasonably find these interactions were facilitated by individuals working for the NYPD. *See generally* ECF No. 18; ECF No. 24. The assertion that Plaintiff was a victim of such a broad conspiracy by the department is therefore not plausible as alleged. *See Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (affirming finding that *pro se* plaintiff's claims were implausible where he alleged he was subject to 24-hour multi-jurisdictional surveillance); *Moore v. Georgia*, No. 24-cv-5545, 2024 WL 4149959, at *3 (S.D.N.Y. Sept. 11, 2024) ("[B]ecause Plaintiff does not provide any plausible factual support for her claims of stalking, they rise to the level of the irrational and must be dismissed as frivolous."). The Court therefore finds Plaintiff's Fourth Amendment claim to be inadequately pled and it is dismissed.

F.      Fourteenth Amendment

Plaintiff alleges her Fourteenth Amendment rights were violated because the NYPD failed to hold departmental hearings that would have allowed her to address the allegations in the department's investigations into her activities.  ECF No. 18 at 8.  "To state a § 1983 procedural due process claim, a plaintiff must first identify a property right, second show that the government has deprived him or her of that right, and third show that the deprivation was effected without due process."  *Kampfer v. Argotsinger*, 856 F. App'x 331, 334 (2d Cir. 2021).  "[I]n evaluating what process satisfies the Due Process Clause, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees."  *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006).  "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy."  *Rivera-Powell*, 470 F.3d at 465.

The allegations underlying Plaintiff's procedural due process claim are akin to the allegations raised in *Rinaldi v. City of New York*.  2014 WL 2579931 (S.D.N.Y. June 10, 2014), *report and recommendation adopted*, 2014 WL 4626076 (S.D.N.Y. Sept. 15, 2014).  There, plaintiff, a retired police officer, alleged his Fourteenth Amendment rights were violated when, among other things, the department failed to hold a hearing to enable plaintiff to contest disciplinary charges before he retired.  *Rinaldi*, 2014 WL 2579931, at *7.  The court found the actions of the department to be "random and unauthorized" state conduct, because, as alleged, the deprivation was not "the product of policy, but of an arbitrary application of an otherwise available procedure."  *Id.* at *9.  The court further found that plaintiff had a meaningful post-

deprivation remedy in the form of an Article 78 proceeding.  *Id.* at *9 ("In New York, a plaintiff may bring an Article 78 action in state court when faced with this very type of injury.").

The Court finds the analysis in *Rinaldi* persuasive and applies it to the instant case.  Here, like in *Rinaldi*, Plaintiff is alleging that the NYPD arbitrarily chose not to hold disciplinary hearings regarding the investigations into her actions before she retired.  ECF No. 18 at 8.  Accordingly, the department's actions here are, at least as alleged, "random and unauthorized" state conduct.  *Rinaldi*, 2014 WL 2579931, at *9.  The Court must therefore determine if the state provides Plaintiff with a meaningful post-deprivation remedy.  *Rivera-Powell*, 470 F.3d at 465.  Similar to *Rinaldi*, the Court finds that Plaintiff has an adequate state post-deprivation procedure in the form of an Article 78 proceeding.  *Rinaldi*, 2014 WL 2579931, at *9.  A claimant may bring an Article 78 action to have a New York state court decide "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion."  N.Y. C.P.L.R. § 7803(3).  Because Plaintiff is challenging the NYPD's alleged decision to forgo holding disciplinary hearings, an Article 78 proceeding may be used as a mechanism of review of that decision.  *See, e.g.*, *Battisti v. City of New York*, 994 N.Y.S.2d 597, 597 (N.Y. App. Div. 2014) (Article 78 proceeding reviewing NYPD's decision to terminate plaintiff following a hearing); *Toolasprashad v. Kelly*, No. 0109964/2006, 2007 WL 2176618, at *1 (N.Y. Sup. Ct. July 09, 2007) (Article 78 proceeding reviewing NYPD's service on plaintiff of disciplinary charges); *see also Kaufman v. Bd. of Educ. of City Sch. Dist. of City of New York*, 619 N.Y.S.2d 753, 753 (N.Y. App. Div. 1994) (petitioner brought Article 78 action to recover damages against respondent for allegedly inducing him to retire early).

26

Where it is available, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy . . . for due process purposes even though the petitioner may not be able to recover the same relief that [she] could in a § 1983 suit." *Rinaldi*, 2014 WL 2579931, at *9; *see also Grant v. City of New York*, No. 19-cv-4334, 2020 WL 5440628, at *2 (S.D.N.Y. Sept. 10, 2020) ("[T]he Court concludes that Plaintiff has failed to state a due process claim in light of the availability of the Article 78 process."), *aff'd*, 850 F. App'x 113 (2d Cir. 2021). Because Plaintiff may have the NYPD's decision reviewed in an Article 78 proceeding, her procedural due process claim fails as a matter of law.

G.     *Monell Claim*

Although Plaintiff has not explicitly alleged a *Monell* claim in her Second Amended Complaint, the Court evaluates her claims as if she had brought a *Monell* claim in order to construe the Second Amended Complaint to raise the strongest arguments they suggest. *See Joseph v. Nassau Cnty. Corr. Facility*, No. 15-cv-7010, 2016 WL 3033725, at *2 (E.D.N.Y. May 26, 2016) ("[B]ecause plaintiff is proceeding *pro se*, the Court will construe plaintiff's complaint as lodged against the municipal entity."). "To succeed on a *Monell* claim, [P]laintiff[] must demonstrate that a policy or custom of the City of New York caused a deprivation of [her] federal or constitutional rights." *Nixon v. City of New York*, 668 F. Supp. 3d 143, 152 (E.D.N.Y. 2023); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978) (holding that a local government can only be sued under Section 1983 when execution of a government's policy or custom causes injury). "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto*, 982 F.3d at 97.

"It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation." *Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (finding that a district court does not need to address *Monell* liability if it finds no underlying constitutional violation).  Applying this standard, the Court need not consider Plaintiff's *Monell* claims.  Because the Court concluded, *see supra* Sections I and II, that Plaintiff's Section 1983 claims are untimely or fail on substantive grounds, there can be no municipal liability with respect to those claims.  *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 658 (S.D.N.Y. 2021) ("Because the Court concluded above that [plaintiff's Section 1983] claims fail, it follows that there can be no municipal liability with respect to these claims.").

Even if the Court had found constitutional violations under Section 1983, Plaintiff's *Monell* claims would still fail.  "[M]unicipalities may not be held liable unless action pursuant to *official municipal policy* of some nature caused a constitutional tort."  *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (emphasis in original).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.*

Other than the conclusory allegation that the NYPD had a custom or policy of racial discrimination, *see* ECF No. 18 at 7, Plaintiff's allegations are otherwise insufficient to show there was a practice that was "so persistent and widespread" that was endorsed by the City to warrant municipal liability for her allegations.  *Gasparino*, 61 F.4th at 93.  Plaintiff has also not alleged that any other individual was subjected to the alleged unconstitutional harms she suffered.  *See Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023) ("It is not sufficient to merely plead that the isolated incidents of the present case imply the existence of a

*de facto* policy.").  The Court therefore finds that these allegations are insufficient to establish

that the City has an official policy of permitting and tolerating discrimination as alleged by

Plaintiff.

Plaintiff has failed to allege any underlying constitutional violation was connected to any

underlying municipal policy.  Accordingly, to the extent that Plaintiff's Second Amended

Complaint can be construed as alleging *Monell* claims, the Court grants Defendant's motion to

dismiss on those claims.

### III.   The Court Declines to Exercise Supplemental Jurisdiction Over Any Potential State Law Claims

Although Plaintiff only alleges violations of federal law, namely Title VII and Section

1983, the Court is mindful that, in light of Plaintiff's *pro* se status, it must construe her pleadings

as asserting claims under the New York State Human Rights Law ("NYSHRL") and the New

York City Human Rights Law ("NYCHRL").  *See McLeod v. Jewish Guild for the Blind*, 864

F.3d 154, 158 (2d Cir. 2017) (district court required to read *pro se* plaintiff's complaint to allege

claims under the NYSHRL and the NYCHRL where factual allegations implicated alleged

discriminatory conduct occurred within the state and city).  However, a court's resolution of all

the claims over which it has original jurisdiction before trial "generally points to declining to

exercise supplemental jurisdiction" over any remaining state law claims.  *Catzin v. Thank You &*

*Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018).  The parties did not address the state law

claims in their papers, and therefore the Court finds no reason to depart from the default rule.

Accordingly, because both of the claims over which this Court had original jurisdiction

have now been dismissed, the Court may, and now does, decline to exercise supplemental

jurisdiction over the remaining state law claims, and those claims are dismissed without

prejudice.  *See* 28 U.S.C. § 1367(c)(3).  Plaintiff is free to pursue them in state court, where such claims are typically heard.

## IV.    The Court Declines to Grant Plaintiff Leave to Amend

Plaintiff has not sought leave to amend, but for the sake of clarity, the Court declines to grant Plaintiff leave to file a third amended complaint.  Although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court declines to grant Plaintiff yet another opportunity to further amend her pleadings.  *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).  "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)."  *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021).

As this decision makes clear, the Court has conducted a detailed review of all the substantive papers filed by Plaintiff.  *See* ECF Nos. 1, 8, 17, 18, 23, 24.  Those papers are voluminous and repetitive.  Nevertheless, even though not required, the Court has excused compliance with the relevant procedural rules to allow Plaintiff, whose allegations cover a sixteen-year period and involve many different incidents, to present all relevant information to allow the Court to make out the "strongest arguments" suggested by her pleadings.  *See Triestman*, 470 F.3d at 472, 477.  At this point, "Plaintiff has pleaded [her] case exhaustively."  *See Vasquez v. City of New York*, No. 22-cv-5068, 2024 WL 1348702, at *14 (E.D.N.Y. Mar. 30, 2024) (denying leave to amend).  Based on the foregoing, the Court easily concludes that

granting further leave to amend is inappropriate because there is no "indication that a valid claim might be stated" as to those claims dismissed under Rule 12(b)(6).  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  That is especially true in this case because Plaintiff has already amended her complaint twice, and the last time she amended her complaint she indicated that she would clarify the specific constitutional rights that she sought to enforce through her Section 1983 claim, and would further clarify that Defendant committed unlawful acts during the statute of limitation periods.  *See* ECF No. 15; ECF No. 16.  Nevertheless, as explained *supra* Sections I and II, many of Plaintiff's claims are still time-barred, and of those claims that are timely, the Court has found dismissal appropriate on substantive grounds.  In any event, because I have considered the allegations raised for the first time in the Opposition, including the many exhibits, as if they were included in a formal amended complaint, Plaintiff has effectively already been given a third opportunity to amend her complaint.  *See McKeever v. Singas*, No. 17-cv-4996, 2022 WL 5430426, at *2, *15 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying plaintiff leave to file a third amended complaint), *report and recommendation adopted as modified*, 2022 WL 4095558 (E.D.N.Y. Sept. 7, 2022).  That is already two more times than the Circuit ordinarily requires, *see Applewhite*, 2024 WL 3718675, at *21, and further leave to replead would be futile.  Plaintiff is therefore denied a further opportunity to amend.

## CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion to dismiss, *see* ECF No. 20.  Plaintiff's Title VII and Section 1983 claims are dismissed with prejudice.  To the extent the Second Amended Complaint can be construed to allege state law claims, the Court declines to exercise supplemental jurisdiction over those claims, and they are dismissed without

prejudice.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to enter judgment, close the case, and mail a copy of this order to *pro se* Plaintiff.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 27, 2024